UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOL BACK,

Plaintiff,

– *against* –

BANK HAPOALIM, B.M., *and* GIL KARNI,

Defendants.

**OPINION & ORDER**

23-cv-2040 (ER)

RAMOS, D.J.:

Sol Back claims that her former employers Bank Hapoalim, B.M. ("BHI") and Gil Karni (collectively "Defendants") violated federal and state law by retaliating against her for filing a complaint against Karni. Doc. 1 at 1. While Back was employed at BHI, she took screenshots of emails from her and Karni's inboxes and used the screenshots in this litigation. Docs. 58 ¶ 7, 50-7. In the instant motion, Defendants move to sanction Back for wrongfully obtaining documents outside of the scope of discovery, and ask the Court for an order to destroy the documents and bar their use in this litigation. Doc. 49. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

Back began working at BHI as an executive assistant in 2016. Doc. 1 ¶ 19. She signed BHI's Employee Understanding & Acknowledgement (the "Confidentiality Policy") on September 6, 2016, in which she agreed "to maintain confidentiality concerning the Bank's business and clients at all times" and understood that "all electronic communication systems and all information transmitted by, received from, or stored in these systems are the property of Bank Hapoalim." Doc. 50-1.

[1] The following background is based on: Back's complaint, Doc. 1; Back's declaration in opposition to motion for sanctions, Doc. 58; Defendants' declaration in support of motion for sanctions, Doc. 50; and Defendants' memo in support of motion for sanctions, Doc. 51.

Karni became the chief executive officer of BHI, as well as Back's supervisor, in late 2020. Doc. 1 ¶ 29. BHI's Employee Manual, updated May 2021, stated that "data residing in the Bank's computer systems is to be kept strictly confidential and may not be disseminated outside of BHI" and that "[i]ndividuals using BHI's computer systems without authority, in excess of their authority, with disregard for proper business practices, or for improper or illegal purposes may be subject to disciplinary action." Doc. 50-2.

The underlying complaint alleges that Karni attended an in-person event at BHI's New York office on December 9, 2021, without informing the staff that he was displaying symptoms consistent with COVID-19. Doc. 1 ¶ 55. Back subsequently filed a formal complaint about Karni's conduct through BHI's confidential whistleblower channel on December 21, 2021. *Id*. ¶ 71. At the time, BHI's whistleblower policy directed employees to report complaints to BHI's chief auditor. *Id*. ¶ 79. Six days after Back filed her complaint, on December 27, 2021, BHI announced a change to its whistleblower policy, which now required employees to instead direct complaints to BHI's general counsel, Vicki Andreadis. *Id*. Back alleges that this policy change gave Karni access to whistleblower complaints because, unlike the chief auditor, Andreadis reported to Karni. *Id*. Back also alleges that at least five male executives complained to HR or to Karni directly about Karni's behavior in relation to the COVID-19 outbreak without facing any repercussions. *Id*. ¶¶ 67, 131.

Back alleges that when she returned to the office in January 2022, Karni was hostile towards her, which she believed was retaliation in response to the complaint that she had filed against him. *Id*. ¶ 82. Back met with Andreadis to discuss her concerns about Karni's alleged retaliation on April 5, 2022, at which time Andreadis told Back that she could either move to a different department or be terminated. *Id*. ¶ 96–98. Almost a month later, on June 2, 2022, Andreadis sent an email to Back stating that Back would no longer report to Karni and instead would be transferred to a different department as a

temporary alternative. Doc. 50-3. In response to this email, Back's attorney sent a letter to BHI stating that she had been constructively discharged from BHI. Doc. 50-5 at 2.

Back filed her complaint against Defendants on March 10, 2023, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law, and retaliating in violation of the New York Labor Law. Doc. 1 at 1.

Back made an initial production of documents to Defendants on February 18, 2025. Doc. 50 ¶ 11. Her production included 32 screenshots of emails and email attachments that were sent to her and Karni's inboxes. *See* Doc. 50-7. There is no dispute that Back had full access to Karni's email inbox with Karni's knowledge and authorization while she was working as his executive assistant, and that Back took these images while she was employed at BHI. Doc. 58 ¶¶ 2, 7; Doc. 60 at 5.[2] Back contends that this access was necessary to her job as executive assistant and that she and Karni would regularly discuss the substance of his emails, including emails on which she was not a recipient. Doc. 58 ¶¶ 4–5. Further, she states that she took these screenshots to support her discrimination and retaliation claims. *Id.* ¶ 7.

The following are descriptions of the screenshots:

- PL_0036, PL_0040, and PL_0041 are screenshots of communications between Back and BHI's chief people officer Jocelyn Bluth.
- PL_0037–39 are screenshots of a COVID-19 update sent to all U.S. BHI employees, including Back.
- PL_0042–43 and PL_0061–69 are screenshots of communications between Karni, Bluth, and others, not including Back. These documents include the health information of BHI employees.
- PL_0044 is a screenshot of communications between Karni and Andreadis.
- PL_0045 and PL_0046 are communications about the COVID-19 outbreak among BHI employees. It is unclear how these communications were obtained—as the recipients and senders listed include neither Back nor Karni––but these appear to have been forwarded to either Back or Karni.

[2] Specifically, Back stated that she took the screenshots some time in spring of 2022. Doc. 58.

- PL_0047 is a screenshot of Andreadis sending the Whistleblower Policy and Ethics Policy to all U.S. BHI employees.
- PL_0048–52 are screenshots of the Whistleblower Policy and PL_0053–58 are screenshots of the Ethics Policy, both updated in December 2021.
- PL_0059 is a screenshot of communications between Andreadis and Back regarding the updated Whistleblower Policy.

Doc. 50-7.

Eleven months after Back produced these documents, on January 9, 2026, Defendants wrote to Back's attorney, stating that Back was not authorized to remove any internal documents from BHI's systems and asking how Back obtained the documents. Doc. 50-8. Defendants claim that Back did not respond. Doc. 50 ¶ 21. Defendants wrote a second letter on January 20, 2026, reiterating their concerns and requesting that Back destroy the documents. Doc. 50-9. Defendants claim that Back did not respond to this letter either. Doc. 50 ¶ 23.

Defendants filed a letter with the Court on January 21, 2026, alleging that Back had obtained confidential documents without BHI's authorization, that communications including Andreadis were privileged, that Back attempted to use the privileged communications during Back's deposition of Bluth, and requesting sanctions against Back. Doc. 41. In a response letter to the Court on January 26, 2026, Back argued that she obtained the documents properly because she had access to them as an executive assistant, that she was obligated to preserve the documents for future litigation, that none of the documents were protected by attorney-client privilege, that the documents are highly relevant to her claims, and that Defendants had wrongfully failed to produce the documents during discovery. Doc. 44. In a hearing held before the Court to address this issue on January 28, 2026, Defendants stated that they would prefer for Back "to destroy the documents . . . and we could have a debate about whether the documents should have otherwise been produced" instead of moving for sanctions. Doc. 50-10 at 20 ¶¶ 23-25,

21 ¶ 1. Back declined to destroy the documents, stating this would be "improper . . . and it would hurt the fact-finding mission of this case." *Id*. at 21 ¶¶ 19-22.

Defendants filed the instant motion for sanctions on February 6, 2026, asking the Court to bar the use of the documents, to order Back to destroy the documents, and to award attorney's fees incurred in connection with Defendants' motion. Doc. 49.

## II. LEGAL STANDARD

"[C]ourts necessarily have the inherent equitable power over their own process to prevent abuses, oppression and injustices." *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (internal quotations and citations omitted). This power can be used to sanction a party where that party has sought to introduce evidence that was improperly obtained outside of the scope of the discovery process. *Id*.

## III. DISCUSSION

### A. Back's Conduct Does Not Merit Monetary or Evidentiary Sanctions

Defendants contend that Back wrongfully obtained the documents because all of BHI's internal documents are confidential pursuant to BHI's Employee Manual and Confidentiality Policy, and Back was not authorized to take screenshots of any confidential documents. Doc. 60 at 5. Back counters that her conduct was not wrongful because she had work-related access to Karni's email with his knowledge and authorization, and merely capturing screenshots of these documents does not amount to an unauthorized taking. Doc. 57 at 2–3.

Before the Court can exercise its equitable authority to sanction a party for attempting to introduce wrongfully obtained evidence, the Court must first find that the evidence was indeed wrongfully obtained. *Niceforo v. UBS Global Asset Management Americas, Inc.*, 20 F.Supp.3d 428, 432 (S.D.N.Y. 2014). Finding that evidence was obtained outside of normal discovery is not sufficient on its own to establish sanctionable conduct. *Id.* ("Courts will not preclude the use of evidence procured outside of normal channels without any indication of wrongdoing.").

It is undisputed that Back took the screenshots while she was an employee at BHI, at which time she had access to Karni's inbox with Karni's knowledge and authorization. Docs. 58, 60 at 5. Back's conduct is thus distinguishable from cases where a party was sanctioned for obtaining evidence they were not authorized to access. *See Fayemi*, 174 F.R.D. at 322 (where the employee obtained the documents after he was told not to return to work by entering his employer's office without authorization); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548, 552 (S.D.N.Y. 2008) (where the employer illegally accessed a former employee's email by using automatic population of their username and password without the employee's knowledge or authorization).

Defendants argue that Back's conduct was wrongful because she acted in violation of BHI's policies. Indeed, when Back took the screenshots to share with her attorneys, she violated both BHI's Confidentiality Policy and Employee Manual. Defendants cite *Campell* to argue that obtaining documents in violation of a company's ethics policy is sanctionable even when their conduct does not amount to a statutory violation or criminal offense. *See Campbell v. Aberdeen Proving Ground Federal Credit Union*, No. 24-cv-3229 (JKB), 2025 WL 608046, at *5 (D. Md. Feb. 25, 2025). However, *Campbell* is not a controlling authority in the Second Circuit.

In the absence of allegations of a statutory violation or criminal offense, courts in this Circuit exercise discretion in determining whether a party's conduct was sufficiently wrongful to warrant an equitable sanction. *Compare Baskett v. Autonomous Research LLP*, No. 17-cv-9237 (VSB), 2018 WL 4757962, at *6 n.8 (S.D.N.Y. Sept. 28, 2018) (holding that an employee's conduct was *not* sanctionable because the employee had legitimate access to the documents within her scope of employment, even though she may have improperly obtained them outside of normal discovery channels), *with Herrera v. Clipper Group, L.P.*, No. 97-cv-560 (SAS), 1998 WL 229499, at *2 (S.D.N.Y. May 6, 1998) (holding that an employee's conduct *was* sanctionable because having access to the employer's documents did not grant the employee implied permission to copy and

disseminate those documents). *Herrera* is distinguishable because there, the employee's conduct went on for a "considerable period," she copied thousands of documents, she took documents from her managers' desk drawers, she lied about her conduct to her employers, and she refused to admit that these documents existed during discovery. *Herrera*, 1998 WL 229499, at *2–*3 ("[P]laintiff's behavior was not the product of a momentary lapse of judgment, but of a calculated strategy, carried out over an extended period."). Here, Back's conduct was undeniably improper to the extent that she violated BHI's internal policies—she did not wrongfully access the documents, nor did she lie about how she obtained them, nor did she compile thousands of documents over an extended period.

Without a showing that Back committed a statutory violation or criminal offense or that she acted with exceptional disregard for the Court, Back's violation of BHI's internal rules is not so severe that it justifies a monetary sanction. In the exercise of its discretion, the Court finds that—though Back improperly took the screenshots—sanctions in the nature of a monetary fine or preclusion of evidence are not appropriate, nor will the Court award attorney's fees. However, because the documents were obtained improperly, the Court will direct Back to destroy the documents and certify to the Court that they have been destroyed.

*1. Back Was Not Obligated to Preserve the Documents*

Back argues that she had an obligation to preserve the documents because they are relevant to future litigation.[3] Doc. 57 at 5. Defendants argue that preserving evidence is

---

[3] Back also argues that her conduct was proper because the documents are relevant to this litigation. Doc. 44 at 3. Defendants counter that the documents are not relevant to any of Plaintiff's claims. Doc. 51 at 11. The underlying relevance of a document is a factor when a court is determining the appropriate remedy for a sanction. *See e.g., Pure Power*, 587 F.Supp.2d at 571 (holding that when a party who wrongfully obtains evidence that would have been secured through the normal discovery, preclusion of such documents is inappropriate). However, there is no legal support to suggest that the relevance of a document impacts whether the manner of obtaining it is sanctionable.

not a viable excuse because Back was not authorized to obtain BHI's confidential documents. Doc. 60 at 6.

Back cites *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423 (2d Cir. 2001) to argue that she had an obligation to preserve the documents. However, *Fujitsu* is misapplied here. In *Fujitsu*, the court held that a party has an obligation to not destroy evidence in their possession when they have notice that the evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation. *Fujitsu*, 247 F.3d at 436. A party having an obligation not to spoliate evidence does not necessarily mean that the counter-party has an affirmative obligation to obtain such evidence. Therefore, Back was not under an obligation to preserve the documents.

2. *Whether Back Engaged in "Protected Activity" is Not Relevant to the Motion for Sanctions*

Back argues that sanctions are inappropriate because preserving evidence of discrimination is a "protected activity." Doc. 57 at 5. Defendants counter that whether or not Back's conduct was a protected activity does not excuse her misconduct. Doc. 60 at 6.

Conduct falls under a "protected activity" when an employee has done something—such as gathering evidence of their employer's wrongdoing—for which their employer cannot punish them. *See Stewart v. Prometric LLC*, No. C19-1362 (JLR), 2021 WL 124316, at *8 (W.D. Wash. Jan. 13, 2021); *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1570 (2d Cir. 1989). Under this doctrine, an employee's conduct may be protected from retaliation by their employer—but that does not mean the conduct is protected from sanctions by the Court. Therefore, whether Back was protected from retaliation when she took screenshots of confidential documents has no bearing on the instant motion.

*3. Whether Defendants "Wrongfully Failed to Produce" the Documents Does Not Impact the Motion for Sanctions*

Back alleges that she was justified in preserving the documents because Defendants "wrongfully failed to produce" them through discovery. Doc. 57 at 7. Defendants counter that they produced all documents that fell within the parameters of Back's production requests and that they disclosed their search protocol, which Back did not contend was deficient. Doc. 60 at 8.

Back's perception that Defendants did not fully comply with discovery does not entitle her to circumvent the discovery process by using screenshots she took on her own.[4] Rather, if a party fails to obey a discovery order, then Rule 37 of the Federal Rules of Civil Procedure authorizes the Court to order appropriate remedies. Fed. R. Civ. P. 37(b)(2)(A). *See e.g.*, *Infinity Headwear & Apparel v. Jay Franco & Sons*, No. 15CV1259 (JPO) (RLE), 2016 WL 2659561, at *4 (S.D.N.Y. May 9, 2016).

## IV. CONCLUSION

For the aforementioned reasons, Defendants' motion to sanction Back is GRANTED in part and DENIED in part. Back shall file a letter with the Court certifying that she has destroyed the documents, Doc. 50-7. The Clerk of Court is respectfully directed to terminate the motion, Doc. 49.

It is SO ORDERED.

Dated: July 16, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.

[4] Back remains free to move to compel the production of the documents.